Mr. Margo Anderson. May it please the court, by misapplying the single reference obviousness analysis, the board wrongly concluded that the Mutu formara sound reference that I'll refer to as Mutu for short does not teach or suggest a single dispute elimination. There is no dispute here that the claimed messages are disclosed by Mutu's commands that identify a media player in our 7 plus smart phones to internet media devices. There is also no dispute that the claimed server system is disclosed by Mutu's media control network on which smart phones also send various commands. The only thing Mutu lacks is an express statement that the disclosed commands identifying the media player are sent on the already disclosed media content network path. But skilled engineers have understood that Mutu suggests the suitability of doing exactly that. Okay, but as I understand what the board said is that they said you didn't argue motivation to combine, right? Your Honor, we did not argue motivation to combine and there was no need for us to argue motivation to combine because this is a single reference obviousness analysis. When there's, when the argument is you would have combined two embodiments from a single reference, you don't have to argue this is motivation to combine the two. So two points, Your Honor. I believe GE suggests that it's a reference, not an embodiment. But even here, we're not combining two embodiments. All of the limitations are in figure one. There's other figures that are blowouts or zoom-outs of what's in figure one, but we are not combining any embodiments. It's about a motivation to modify. Why don't you have to show that? Well, two points, Your Honor. As a legal matter, cases such as unification technology say there's no categorical rule requiring a motivation to modify when we're dealing with a single reference. And here, Your Honor, there is nothing to modify. The message as claimed is, there's no dispute that the message as claimed is to close and move through. For example, in the commands in figure 19, there's also no dispute that the service system as claimed is already disclosed by the media control network, which is the z-hub and the z-node. The only issue is whether skilled engineers would have understood the suitability of taking the already disclosed message and sending it on the already disclosed path. But the message and the path do not need to be modified. That sounds like a modification. It's not expressly disclosed, at least, exactly as it needs to be in the Muth reference. Just the way you've described it, you've made it clear, I thought, some sort of modification is necessary. Your Honor, it's not a modification. It's a selection. There's multiple paths disclosed in Muth. We're not altering any paths. We're not altering the content of any message. But you're using a path for a purpose that Muth does not expressly disclose using it for. Right. Muth suggests, at minimum, suggests doing that. But there's no modification for a path. There's no modification for the message. Your Honor, does that speak to your question, Your Honor? I think it does, but then, so what do you say to the board's analysis? The board said that wouldn't be obvious. Right. Well, I think the board's analysis actually commits the same errors as the board corrected in JANSA. In particular, it was three things. The board cut short the analysis required for obviousness. The board identified the differences between Muthu and the claims, and it ended there. But that's where the analysis should have started, namely, what does Muthu fairly suggest and teach to the field engineers, and what are the inferences? And the board never undertook that analysis. So it stopped the inquiry where it should have started. Had it looked at the evidence, we know that the entire purpose of Muthu is to provide a system that abstracts the differences between different media buses, Internet media buses, non-Internet media buses. So in a sense, though, you're saying, present the reference that the board has an obligation to, on its own, to find this motivation to modify it so that it would perform the path limitations. That's the hard sell, right? Your Honor, we are not relying on a motivation to modify. But if the reference doesn't do it the way the patent does, even though it has the components to do it, if it doesn't explicitly teach that, then you have to find an explanation for why those components would be used in a different way than the reference discloses to cover all the patent. And the board found you didn't show that. Your Honor, so two points. As I understand the question, there's no modification there. I don't know why you're getting caught up in this. This is not an argument that Muthu teaches how to do it exactly the way the patent, right? I don't agree that there are paths. I thought your argument was, all the pieces are here. Muthu teaches sending it under one pathway. The patent says do it under another way. So you have to go assume that a skilled artisan would look at this and say, well even though Muthu said send it through this pathway, a skilled artisan would know you could also send it through this other pathway. Is that fair? That's fair. Okay, so if that's what's happening, you've got to give a reason for why a skilled artisan would come to that conclusion. And the board found you didn't. No, Your Honor, so I respectfully... If that's the way the board viewed it, then that's consistent with the law, right? No, because the board identified the differences. The board never undertook the analysis as to why or whether a skilled engineer would understand it suitable to take that message and send it. Because you didn't argue it. Because you didn't argue it. No, Your Honor. I'm sorry. I didn't mean to interrupt you. Go ahead. Where did you argue it? So I would point this court to paragraphs 79 and paragraphs 98 to 102 in Dr. Bederson's declaration. And that's a... If we... For instance, at paragraph 79, that's... What page would it be? Absolutely, Your Honor. Paragraph 79 is at page 2078. And that's where Dr. Bederson explains that the media control network satisfies the server system requirement. Is there a 78? 2078, Your Honor. But then if we look to paragraphs 98 through 102, which is at pages 2087 through 2090, we see that at paragraph 98, Dr. Bederson again explains that there are commands that would be sent on the media control network. And in particular... And those commands he discusses in paragraphs 100 and 102. And in particular, in paragraph 98, he cites figure 19, which shows... Where does he say he would take these teachings of the prior art records and do a modification? He's not arguing... He's not opining on modification. He's saying that a skilled artisan would understand that you could take that message... I'm sorry. You could take... You could use the path, the media control network path, and you could send the messages that are disclosed in figure 19. You would send those messages on the media control network path. Now, if I'm using an analogy, it's a path. I drove here in my car. I could have taken various paths to get here. I didn't change my car. I didn't change the path. There was no modification. It was just a question of selecting which path I would take to get here. That is what's going on here. We have a message here. So to speak. Just taking your analogy, if you were trying to prove that the way you got here was obvious, wouldn't you at least have to have come up with a reason for why someone would choose that path? It would have to be a suitable path, and I think that's what that is. Where is your expert doing that? Sure. Again, paragraph 98, he says this is the path, and these are the commands that will be sent. Let me back up, Your Honor. I see. Paragraph 98, he says there's a path, and commands will be sent on that path. In paragraphs 100 through 102, he describes why the claimed messages, which are the commands, would be sent on that path. The path is the Z path? Correct. It's the Z hub, you know, that the path identifies. Which now doesn't send the identity of the media player, and you're saying that someone reading that would say we should do that. We should send a media player identity through that path. You would send a command in figure 19 which identifies a media player through that path. In particular, Your Honor, to your point, another place I would point to is figure 5. That's 2349 in Lutheran. If we look at that, the next to last column shows commands for both together, commands for both Internet media devices such as DVDs, VCRs, and non-Internet media devices such as DVDs, VCRs, and Internet media devices, which is the Sky software that executes, for example, on HD Stick. That's number 5 in figure 1. And TouchStream's own expert explains that the Sky software is equivalent to Internet media devices that will stream Internet media. So if you look at Dr. Bederson's paragraphs 98 through 102, and you look at figure 5, and importantly Dr. Bederson does this through the lens of what is the goal and objective of Mootoo, which is to abstract away the differences between different media devices and have a system that can transmit different messages with different protocols. And that's found in paragraphs 44 and 58 of Mootoo, and Dr. Bederson's slideshow as well. So, Your Honor, also with respect to a board analysis, if you look at the board analysis on pages 27, 28, 29, and 30, what it does, just like Janssen, it says there's a difference, and stops. And it also does that by isolating specific portions of Mootoo, rather than viewing it as a whole. It looks at figure 18 and says, I don't see the media control network path here, instead of viewing figure 18 in a context of Mootoo as a whole, such as figure 1. And it does the same thing with figure 5. It abridges figure 5 without analyzing it as a whole. There are no further questions, Your Honor. Okay. Thank you. Thank you, Your Honor. May it please the Court. There is substantial evidence to support the board's final written decision. Even had Google put forward its expert testimony discussing how to modify Mootoo Kumarasamy to show all of the elements of the packet claims, this panel should still uphold the board's decision. There is substantial evidence to support it. The declaration of Dr. Almaroff was cited and discussed extensively during the final written decision. Dr. Almaroff explains in his declaration, paragraphs 128 and 129, how one of ordinary skill in the art would understand the Mootoo reference. And specifically, he explains there are two separate pathways that this panel has understood. One is the z-hub-z node. And think of this as like a universal remote control. The z-hub-z node sends infrared commands to devices that are not connected to the internet. VCRs, TVs, old TVs, DVD players. The z-hub-z node, the purpose of it is to convert instructions from the IED into a format that can be understood by these non-internet connected devices. And it does that by converting it to infrared codes. One of skill in the art, as discussed by Dr. Almaroff, would see that and understand, okay, this supposed service, the z-hub-z node, is there to talk to these non-internet devices. Dr. Almaroff explains this is something not addressed by the board. But that embodiment also does not include programming code. And Google's expert admitted that during his deposition, that infrared codes are not programming codes as contemplated by the patent under patents. Alternatively, the other embodiment discussed in Mootoo from Tarasami, and it's almost an afterthought, it's just a paragraph at the very end, you could also use a remote controlled internet browser. That remote controlled internet browser is shown throughout Mootoo as being connected over Wi-Fi. And it's explained that this is a Wi-Fi connected internet streaming device. As Dr. Almaroff explained, one of ordinary skill would see that and understand, you would not need to go through this z-hub-z node server system, as identified by Google, to communicate with the RCIBS. It would not make sense to convert instructions that would be natively understood by a computing device such as the RCIBS, convert it to an infrared code, blast it to this inner, you know, the z-stick, which is not described as having an infrared receiver, and then converting it back to a computer code. Rather, as Dr. Almaroff explains, one of skill in the art would understand that these computers could connect directly. And that's shown in the figures of Mootoo from Tarasami. Both figure 18 and figure 5 show a Wi-Fi connection from the internet enabled device to the z-stick. That's how one of skill in the art would understand that. Now again, Google did not map it that way. They provided no evidence or argument for why one of skill in the art would take that disclosure for the z-stick and modify it to send it through that path. In contrast, Google says that, you know, it's kind of difficult to understand what Google's arguing. At first they say there's no reason to modify it. But then they say it would be obvious for one of skill in the art to understand that you could go through there. And I think what that boils down to is Google understands they put themselves in a problematic area. When the board was discussing the understandings of Mootoo from Tarasami, it cited Dr. Almaroff's declaration extensively. That's substantial evidence, and it's there in the final written decisions. When called out, with Pat and others' response, Google's reply tried to shift their mapping to say, oh, well, the RCIBS could be part of the server system. But the board correctly found that is not how Google mapped it. If you look at the petition and the board specifies this, it rejected Google's argument that that was how it mapped it. And without that mapping, Google's left with a problem. The problem being there is no single express embodiment or disclosure that teaches how one of skill in the art would take these two embodiments and combine them. What do you think of the analogy we were given today about there's at least, I take it, two different ways you could drive here to the university? Isn't it obvious just on its face that, you know, if I don't take road one, I take road two? So two points to that. One, even had Google presented that argument, again, there is substantial evidence to support what the board did find. And I think a different analogy that was used below the board is a little more illustrative. Picture a patent on a cell phone. A cell phone has both Wi-Fi communications and cellular communications. Those are two different ways to communicate with the Internet. What Google has essentially done is petition, is picked and choose portions of the Wi-Fi protocol that match certain limitations and portions of the cellular protocol that meet certain limitations and just said, look, every element is disclosed. The problem is we came in with an expert who viewed it through the lens of one of ordinary skill and said one of ordinary skill would not understand these two protocols to be used at the same time. You need some reason why you would match elements A, B, and C to elements D and E. And Google simply failed to do that. So this repeated anthem that Google has that Muthu Kumarasamy is a source and device agnostic system is certainly not motivation for one to combine it. We agree it does intend to have a source and device agnostic system. So when you're selecting with the Internet-enabled device, if you choose Internet content, it will play. Or if you choose VCR content, it will play. That is what Muthu is getting at. But that does not mean the separate processes that Muthu teaches to achieve those things would be combined without some reason to do so. And again, Dr. Almaroff explains you would not have a reason to do so. It would make no sense for one of skilled in the art in computer science to route communication commands through this infrared z-hub, z-net server system that Google intends as a server system. What about Janssen? Google says it's all over their brief and you don't even respond to it. Yes, so Janssen has had fundamentally different posture in this case. In Janssen, the real issue that the appellate court took was that they misconstrued the claims and made them unduly narrow. If, looking at it under the proper interpretation, the claims shouldn't have been restricted that way. And when they weren't restricted that way, the obviousness of the claims became apparent. Now, the board did discuss minor variations, which I think is what Google is arguing about with Muthu Kumarasamy. But there was evidence in Janssen about how those minor variations would be viewed by one of skilled in the art. That is something completely lacking in this case. And again, even had Google put forward such rationale, how one of ordinary skilled in the art maybe could mix and match those, the board reviewed Peterson's testimony and reviewed Dr. Almarant's testimony and made findings of fact that is not how one of ordinary skilled would view Muthu Kumarasamy and it would not be obvious. And the board's decisions there are supported by substantial evidence and there are deference on the fact of it. I would also note that I think the real issue in Janssen was there was an improper teaching way argument, which is not in the final ruling decision. If the board has no further questions, I'm happy to give my time. See, that's a mistake that's made so often. Call us the board, why not? I'm so sorry, Your Honor. That's sort of indifference, man. Yes, it is. I apologize. Thank you, Your Honor. A few quick points. First, the board's decision addressing this issue is on pages 27 through 32. It never cites Dr. Amelroth. TouchStream's argument about Dr. Amelroth's testimony is based on an opinion the board did not write, on facts the board did not find, and on evidence the board did not cite. Second point, Your Honor, TouchStream brings up Figure 5 and how they're different. If we look at Figure 5 again, 2349, I believe, in Muthu, the second to last column, treats the Internet messages and non-Internet messages as overlapping cases side by side. And there's nothing, Your Honors, in Muthu that says the claims – I'm sorry, that says the messages in Figure 19 are limited, restricted, or excluded from being sent on the media control network. There's simply no evidence of that, certainly none that the board cited or found. So with that, if the court has no questions, I'll get it back to you. Okay, thank you. Thank you, Your Honor.